FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ FEB 28 2019 ★

BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ROBERT E. MCDONALD,

              Plaintiff,

      -against-

AHMED Y. ELKHOLY,

              Defendant.
------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**16 CV 2201 (AMD)(LB)**

**BLOOM, United States Magistrate Judge:**

      Plaintiff Robert E. McDonald brings this *pro se* diversity action against *pro se* defendant, Ahmed Y. Elkholy, alleging various state law contract and tort claims. The crux of the action is plaintiff's property that has been stored in defendant's garage since 2010. The parties settled this case on the record during a Court conference on December 19, 2017, ECF No. 49, and filed a settlement agreement on March 8, 2018, ECF No. 62. Since that time, plaintiff breached the parties' settlement agreement by failing to remove his property from defendant's garage, despite being given several opportunities to do so. As plaintiff has failed to remove his property from defendant's garage as agreed to in the settlement, I respectfully recommend that this case should be dismissed with prejudice.

## BACKGROUND

      Plaintiff brought this case to retrieve the property that he stored in defendant's garage nearly nine years ago.[1] ECF No. 1, Complaint, ("Compl.") ¶ 7. Plaintiff and defendant have known each other since 2004, as former business partners and friends. Id. ¶ 4. In May 2009, plaintiff asked defendant if he could store his property in defendant's garage. Id. ¶ 5. Plaintiff alleges that defendant allowed him to store his personal belongings in defendant's garage free of charge. Id. ¶ 8. On June

---

[1] To satisfy the Court's concerns regarding the amount-in-controversy to establish diversity jurisdiction, plaintiff filed an inventory alleging that the value of the property was worth more than $75,000 at the time the case was filed. ECF No. 44.

15, 2010, plaintiff hired a moving company to deliver his property to defendant's garage. Id. ¶ 7. Plaintiff maintained periodic contact with defendant over the next six years to confirm that his property remained in defendant's garage.[2] Id. ¶¶ 9–10. When the parties spoke on December 30, 2015, defendant told plaintiff that he could not enter his own garage because plaintiff's belongings were in his way.[3] Id. ¶ 12. Defendant allegedly reassured plaintiff that when plaintiff was ready to remove the property, defendant would open his garage. Id.

On March 12, 2016, defendant stated that plaintiff could remove the property when it was convenient for plaintiff, and that he should do it soon. Id. ¶ 15. On April 20, 2016, plaintiff called to tell defendant that he was planning to come to New York to retrieve his property and that plaintiff's probation officer, Ms. Oliveras, would be calling defendant to confirm that plaintiff's property was stored in defendant's garage. Id. ¶¶ 17–18, 21. Defendant told plaintiff that he would tell Ms. Oliveras that "the property was rained out and that it was no longer there." Id. ¶ 19. On April 22, 2016, Ms. Oliveras called defendant and reported to plaintiff that defendant denied holding any property for plaintiff, except for "maybe some mattress." Id. ¶¶ 21–22. Plaintiff alleges that despite not being able to reach defendant, he traveled to New York on April 25–27, 2016 to remove his property from defendant's garage. Id. ¶ 35. Plaintiff alleges that when he travelled to New York, he was unable to reach defendant and therefore he could not retrieve his property from defendant's garage. Id. ¶ 36.

## PROCEDURAL HISTORY

Plaintiff filed this *pro se* action against defendant, who is also proceeding *pro se*, on April 26, 2016 alleging various state law contract and tort claims. The parties entered into an agreement on the record during a Court-ordered telephone conference on December 13, 2016 that plaintiff would pay

---

[2] In July 2011, plaintiff was convicted of wire, securities, and mail fraud in the Southern District of New York. See United States v. McDonald, 825 F. Supp. 2d 472 (S.D.N.Y. 2011) (denying plaintiff's motion for a new trial), aff'd, 759 F.3d 220 (2d. Cir. 2014). Plaintiff apparently moved his property into defendant's garage before he went to prison.

[3] Plaintiff's complaint states that this call took place on December 30, 2016. Compl. ¶ 11. However, the Court assumes plaintiff meant December 30, 2015.

defendant $5,000, remove his property from defendant's garage, and then pay defendant another $5,000 within three months of removing his property. See Tr. of Dec. 13, 2016 Conference, ECF No. 23, at 32–33. Because plaintiff was unable to secure the money proposed for the settlement, he asked defendant to modify the agreement during a Court-ordered telephone conference on February 2, 2017, but defendant rejected the proposed modification. ECF Nos. 22, 26, 28, 32. Defendant then moved to dismiss the complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF Nos. 16, 32. On August 15, 2017, the Court granted the motion in part and denied the motion in part; all of plaintiff's claims against defendant, except for plaintiff's conversion claim, were dismissed.[4] ECF No. 36.

After two more telephone conferences, the parties settled the case on the record during a telephone conference with the Court on December 19, 2017. ECF No. 49. The settlement was then reduced to a writing and filed with the Court on March 8, 2018.[5] ECF No. 62.

More than a year has passed since the Court conference during which the parties settled this case and plaintiff has failed to remove his property from defendant's garage, despite being afforded multiple opportunities to do so. See ECF Nos. 66, 69, 73. As contemplated by the parties' settlement agreement, the movers that plaintiff hired to remove the property from defendant's garage arrived at defendant's garage on May 9, 2018, but would not move plaintiff's property because it was moldy

---

[4] Plaintiff's conversion claim is based on defendant's alleged refusal to respond to plaintiff or give plaintiff access to his property in defendant's garage in April 2016. Compl. ¶¶ 53–57. Any potential damages that plaintiff would be awarded would be limited to this claim. See Cohen v. Allied Van Lines, No. 01-102/196, 2002 WL 221078, at *1 (1st Dep't 2002) (plaintiff "was obligated to exercise reasonable efforts to mitigate damages [stemming from her conversion claim by timely reclaiming her property] . . . and her utter failure to do so precludes the recovery of the full value of the [property] allegedly 'converted.'"). The Clerk of Court is hereby directed to send plaintiff a copy of this unreported case.

[5] During the December 21, 2017 conference, the Court ordered plaintiff to file a draft settlement agreement based on the agreement reached by the parties on the record during the December 19, 2017 telephone conference. See ECF No. 55. On January 7, 2018, plaintiff filed a draft agreement; however, he included terms which had not been agreed to during the December 19, 2017 Court conference. ECF No. 56. The settlement agreement was revised to reflect only the terms the parties had agreed to on the record. ECF No. 58. The parties then executed and filed the revised settlement agreement. ECF No. 62.

3

and infested with bugs. ECF No. 66. The Court held an unscheduled telephone conference with the parties on May 9, 2018, where the parties agreed that plaintiff would remove the property from defendant's garage himself on June 11, 2018. Id.[6]

On May 24, 2018, plaintiff wrote to notify the Court that due to a required court appearance in another matter in Wisconsin, he would not retrieve his property from defendant's garage on June 11, 2018 as planned. ECF No. 67. The Court scheduled a telephone conference for June 5, 2018 to address plaintiff's request to modify the parties' agreement again, to change the date that plaintiff would remove the property from defendant's garage. ECF No. 68.

Defendant could not be reached for the June 5, 2018 conference. ECF No. 69. The Court therefore adjourned the telephone conference until June 11, 2018, the date scheduled for the property to be removed, to find a new date that the parties could agree to for plaintiff to remove his property from defendant's garage. Id. On June 11, 2018, the Court held a telephone conference and the parties agreed that plaintiff would personally remove his property from defendant's garage on August 16, 2018. ECF No. 72.

Yet again, in early August, plaintiff wrote to notify the Court that he was incarcerated in Wisconsin on a violation of his supervised release and thus he was unable to travel to New York on August 16, 2018 to remove his property from defendant's garage.[7] ECF No. 75. After that communication, plaintiff did not contact the Court for months.

Having received no contact from plaintiff and in light of plaintiff's breach of the settlement agreement, on October 22, 2018, the Court ordered plaintiff to show good cause why defendant should not be allowed to immediately dispose of plaintiff's property and why this case should not be

---

[6] As plaintiff was on supervised release at the time of these events, the Court arranged for a member of the EDNY Probation Office to be present at defendant's garage on May 9, 2018, June 11, 2018, and again on August 16, 2018.

[7] Initially, the Court was under the misimpression that plaintiff's August 2018 detention would be short-term, and therefore I stayed the removal of plaintiff's property from defendant's garage until plaintiff's release from custody. ECF No. 73.

dismissed.[8] ECF No. 76. Plaintiff responded to the Court's Order and I set a telephone conference for December 20, 2018. ECF Nos. 79, 80.

During the December 20, 2018 conference, plaintiff was given another opportunity to arrange for his property to be removed from defendant's garage. ECF No. 82. Plaintiff was warned that his failure to make arrangements to remove his property as he had agreed to do in the settlement agreement would result in the Court recommending that his case should be dismissed. Id. The Court ordered plaintiff to designate someone to remove his property by February 28, 2019 and to report his designee's name and their contact information to the Court by the next telephone conference on January 15, 2019. Id.

At the January 15, 2019 telephone conference, plaintiff reported that his wife may be able to come to New York to remove his property from defendant's garage, but she could not do so until sometime in September 2019. Tr. of Jan. 15, 2019 Conference, ECF No. 86, at 3.

## DISCUSSION

"[A] settlement agreement is a contract that is interpreted according to general principles of contract law. Once entered into, the contract is binding and conclusive." Powell v. Omnicom, 497 F.3d 124, 128 (2d Cir. 2007) (internal citations omitted); see also Collick v. United States, 552 F. Supp. 2d 349, 352 (E.D.N.Y. 2008) ("Settlement agreements to end litigation are strongly favored by courts and are not lightly case aside . . . [o]nce reached by parties, settlement agreements are binding and enforceable.") (internal citations omitted). "Under New York law, a party's performance under a contract is excused where the other party has substantially failed to perform its side of the bargain or, synonymously, where that party has committed a material breach." Process Am., Inc. v. Cynergy Holdings, LLC, 839 F.3d 125, 136 (2d Cir. 2016). Several

---

[8] Plaintiff failed to notify the Court of his change of address. Nevertheless, the Court searched the Federal Bureau of Prisons inmate locator website to locate plaintiff at FMC Rochester and sent plaintiff the October 22, 2018 Order at that address.

after May 9, 2018.[9] ECF Nos. 66, 69, 72, 73. The parties agreed in the Court-ordered telephone conference on June 11, 2018 that plaintiff would remove his property from defendant's garage on August 16, 2018 at 9:00 a.m. ECF No. 72.

It has been more than a year since the parties entered the initial oral agreement, and more than eight months since the parties modified their settlement agreement to agree to the August 16, 2018 date for plaintiff to remove his property from defendant's garage. ECF Nos. 49, 72. Plaintiff has breached the settlement agreement by failing to remove his property from defendant's garage. Defendant has stored plaintiff's property without compensation for the last nine years. During the January 15, 2019 conference, plaintiff again sought to modify the parties' settlement agreement, extending the time to remove his property from defendant's garage to September 2019, without compensating defendant. Tr. of Jan. 15, 2019 Conference, ECF No. 86, at 3. Defendant did not agree to further extend plaintiff's time to remove the property from his garage. Id. at 8–9. Despite being given several extensions, plaintiff has failed to remove his property, and thus plaintiff has materially breached the parties' settlement agreement.[10]

---

[9] The parties' oral agreement to modify their settlement was entered into on the record during a Court-ordered conference and therefore is valid and enforceable. Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 444 (2d Cir. 2005) (The trial court's "inherent power to enforce summarily a settlement agreement when the terms of the agreement are 'clear and unambiguous' . . . is 'especially clear where the settlement is reported to the court during the course of . . . significant courtroom proceedings.'") (internal citations omitted); see also Kaplan v. Old Mut. PLC, 526 Fed. App'x 70, 72 (2d Cir. 2013) (summary order) ("Under New York law, parties may modify a contract by another agreement, by course of performance, or by conduct amounting to waiver or estoppel.") (internal citation omitted). In this case, the parties agreed to reschedule the date plaintiff would remove his property from defendant's garage during Court-ordered conferences on May 9, 2018 and June 11, 2018. ECF Nos. 66, 72.

[10] The parties' settlement agreement stated that "after the movers successfully remove MCDONALD'S property from ELKHOLY'S garage on May 9, 2018, MCDONALD will immediately dismiss the current civil suit[.]" ECF No. 62. Although plaintiff did not "successfully" remove his property from defendant's garage on the date specified, defendant lived up to his side of the agreement. Expecting defendant to continue to store plaintiff's property for more than seven additional months without compensation is unreasonable. See Guilbert v. Gardner, 480 F.3d 140, 149 (2d Cir. 2007) ("Where a contract does not specify a date or time for performance, New York law implies a reasonable time period."); Savasta v. 470 New Port Assoc., 82 N.Y.2d 763, 765 (1993) ("What constitutes a reasonable time for performance depends upon the facts and circumstances of the particular case[.]") (internal citation omitted); 184 Joralemon, LLC v. Brklyn Hts Condos, LLC, 985 N.Y.S.2d 588, 591 (2d Dep't 2014) (In considering reasonableness, courts look to "the nature and object of the contract, the previous conduct of the parties, the presence or absence of good faith, the experience of the parties[,] and the possibility of prejudice or hardship to either one, as well as the specific number of days provided for performance[.]") (internal citation omitted).

factors inform the Court's analysis of "[w]hether a failure to perform" amounts to a material breach, including "the absolute and relative magnitude of default, its effect on the contract's purpose, willfulness, and the degree to which the injured party has benefitted under the contract." Id. "For a breach to be material, it must go to the root of the agreement between the parties." Id. (internal quotation marks and citation omitted).

> The relevant terms of the *pro se* parties' settlement agreement are as follows:
>
> > [I]n consideration of the mutual agreement and promises contained herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged by the PARTIES, and the PARTIES agree to the following:
> >
> > (1) MCDONALD will hire and retain the services of a moving company to arrive at ELKHOLY's private residence on May 9, 2018 at 9:00 a.m. with instructions to remove the property from the garage.
> > (2) ELKHOLY will allow the moving company to remove the property from the garage on Wednesday, May 9, 2018.
> >
> > In exchange for an in consideration of ELKHOLY'S release of MCDONALD'S property from his garage to the movers on May 9, 2018 beginning at 9:00 a.m., MCDONALD hereby fully releases, acquits, and forever discharges ELKHOLY . . . from any and all claims, liabilities, causes of action, damages, costs, attorney's fees and expenses . . . that MCDONALD may now have, has ever had, or may have [had] after the date of this signed agreement relating [to the storage of his property in defendant's garage.]
> >
> > Furthermore, after the movers successfully remove MCDONALD's property from ELKHOLY's garage on May 9, 2018, MCDONALD will immediately dismiss the current civil suit . . . with prejudice and forever waive any right, claim, privilege, or liability arising from or out of this action.
> >
> > ELKHOLY will dismiss the counterclaim [seeking costs of storage] asserted in this action with prejudice[.]

ECF No. 62. The settlement required plaintiff to remove his property from defendant's garage on May 9, 2018. Id. Defendant gave plaintiff access to his garage on May 9, 2018. ECF No. 66. However, plaintiff failed to remove his property. In the interest of justice, the Court worked with the parties to effectuate their agreement by rescheduling the property removal on two occasions

6

Although the Court recognizes that plaintiff did not choose to be incarcerated, the parties entered into the settlement agreement when plaintiff was not incarcerated. See ECF Nos. 49, 66, 72. Moreover, plaintiff was given several chances after he was reincarcerated to make alternative arrangements to retrieve his property. ECF Nos. 76, 82, 86. "When a party makes a deliberate, strategic choice to settle, a court cannot relieve him of that choice simply because his assessment of the consequences was incorrect." Powell, 497 F.3d at 128 (internal citation omitted). Plaintiff's incarceration does not excuse him from his obligation under the settlement agreement. See Willgerodt on Behalf of Majority Peoples' Fund for the 21st Century, Inc. v. Hohri, 953 F. Supp. 557, 560 (S.D.N.Y. 1997) ("A court may relieve a party of the consequences of a settlement agreement only where there is cause sufficient to invalidate a contract, such as fraud, collusion, mistake or accident[.]") (internal quotation marks, citations, and alterations omitted). Plaintiff's failure to remove his property from defendant's garage is a material breach of the parties' settlement agreement.

"Under New York law, when one party has committed a material breach of a contract, the non-breaching party is discharged from performing any further obligations under the contract, and the non-breaching party may elect to terminate the contract and sue for damages." NAS Elecs., Inc. v. Transtech Elecs. PTE Ltd., 262 F. Supp. 2d 134, 145 (S.D.N.Y. 2003) (citations omitted). "A general principle of contracts is that recovery for breach of contract should put the injured party in as good a position as he would have occupied had the contract been kept." Wechsler v. Hunt Health Sys., Ltd. 330 F. Supp. 2d 383, 424 (S.D.N.Y. 2004) (internal quotation marks and citations omitted).

Although money damages are the typical remedy for the non-breaching party, this case presents unique challenges and circumstances as both parties proceed *pro se*. Defendant agreed to withdraw his counterclaim for the cost of storing plaintiff's property in his garage and is prejudiced by being required to indefinitely store plaintiff's property without compensation. See Tr. of Dec. 20, 2018 Conference, ECF No. 81, at 7–8 (defendant acknowledged that the counterclaim has been

waived, but expressed his dismay that plaintiff could make further excuses to require defendant to store his property without compensation). The Court explicitly warned plaintiff in its October 22, 2018 Order to Show Cause that plaintiff was being afforded a last chance to arrange to remove his property from defendant's garage and that defendant would not be required to further store his property. ECF No. 76. Plaintiff suggested that his wife "may be able to remove the property" at the end of September 2019.[11] Tr. of Jan. 15, 2019 Conference, ECF No. 86, at 7. Requiring defendant to store plaintiff's property in his garage for at least another seven months without compensation is unreasonable. Moreover, as plaintiff is incarcerated and was permitted to proceed *in forma pauperis* in this action, awarding defendant money damages as a remedy here for the cost of continuing to store plaintiff's property would likely be futile. Defendant stored plaintiff's property in his garage without compensation for the last nine years. The interests of justice require that this case should be dismissed and defendant should be released from any obligation to retain plaintiff's property.

## CONCLUSION

As plaintiff has breached the settlement agreement entered into by the parties to end this case, and plaintiff has failed to show good cause why this case should not be dismissed, it is respectfully recommended that this case should be dismissed. Defendant should be permitted to dispose of plaintiff's property without further notice to plaintiff within thirty days of an Order adopting this Report and Recommendation.

---

[11] Plaintiff suggested a date, but did not commit that his wife would remove his property from defendant's garage by a date certain. Tr. of Jan. 15, 2019 Conference, ECF No. 86, at 7.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

SO ORDERED.

/S/ Judge Lois Bloom
_____
LOIS BLOOM
United States Magistrate Judge

Dated: February 28, 2019
       Brooklyn, New York